**TA LEGAL GROUP PLLC**
Taimur Alamgir, Esq.
Matthew Daidola, Esq.
205 E Main Street, STE 3-2
Huntington, NY 11743
(914) 552-2669
tim@talegalgroup.com
matthew@talegalgroup.com
*Attorney for Plaintiff Aleema Duncan and FLSA Collective Plaintiffs*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEEMA DUNCAN,<br><br>Plaintiff,<br><br>- against -<br><br>ZACHARY SCHWEBEL, BROOKLYN CHRYSLER DODGE JEEP LLC, & SMG AUTOMOTIVE HOLDINGS LLC.,<br><br>Defendant. | Case No.:<br><br>**COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Aleema Duncan ("Plaintiff or "Ms. Duncan"), by and through his undersigned counsel of record, TA Legal Group PLLC hereby files this Collective Action Complaint ("Complaint") against Defendants Zachary Schwebel ("Schwebel"), Brooklyn Chrysler Dodge Jeep LLC ("Brooklyn Chrysler"), and SMG Automotive Holdings LLC., ("SMG") (collectively "Defendant"), and alleges as follows:

**INTRODUCTION**

1. Plaintiff Aleema Duncan, a former employee, was subjected to a litany of wage and hour violations of the Fair Labor Standards ("FLSA") and New York Labor Law

("NYLL").

2. Routinely, Ms. Duncan worked over 40 hours per week and was deprived of overtime payment.

3. Defendant also withheld and ultimately failed to pay several month's commissions owed to Ms. Duncan under law.

4. Ms. Duncan repeatedly requested Defendant provide the full compensation she earned, in compliance with the FLSA and NYLL. Defendant responded to these requests with spurious excuses and contrived conditional situations.

5. Ms. Duncan's complaints about her pay resulted in her retaliatory termination by the Defendants in violation of the FLSA and NYLL's anti-retaliation provisions.

## CLAIMS

6. Plaintiff seeks recovery under the FLSA for these egregious and continuous violations on behalf of herself and FLSA Collective Plaintiffs and are entitled to recover damages from Defendants based on the following: (1) unpaid overtime, (2) liquidated damages, and (3) attorney's fees and costs.

7. Plaintiff further alleges, pursuant to the NYLL, that she is entitled to recover damages from Defendants for the following: (1) unpaid overtime, (2) unpaid minimum wages, (3) unpaid earned commissions, (4) liquidated damages, (5) statutory penalties for failing to provide wage notices in compliance with NYLL 195.1, and (6) statutory penalties for failing to provide wage statements in compliance with NYLL 195.3.

8. Plaintiff further alleges, pursuant to the FLSA and NYLL, that she is entitled to damages, including back wages, front wages, emotional distress damages, punitive damages, liquidated damages, pre-judgment interest of 9%, and attorneys' fees and costs, based on retaliation for her protected complaints, culminating in Plaintiff's unlawful termination.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1337.

10. This Court possesses jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims in this District.

## PARTIES

**Plaintiff**

12. Ms. Duncan is a resident of Nassau County, New York.

13. In August 2022, Ms. Duncan was hired by SMG to work at 2286 Flatbush Ave, Brooklyn, NY 11234 for Brooklyn Chrysler, a subsidiary of SMG.

14. Ms. Duncan's employment was terminated illegally on January 29, 2025.

**Defendant**

15. **Defendant SMG** is a domestic limited liability company organized under New York Law.

16. **Defendant Brooklyn Chrysler** is a subsidiary of SMG.

17. **Defendant Schwebel** is the Chief Executive Officer ("CEO") of SMG and a resident of Brooklyn, NY.

18. Schwebel supervised Ms. Duncan and FLSA Collective Plaintiffs and had control over the terms and conditions of Plaintiff's employment, and those of similarly situated employees. Schwebel had authority to (i) fire and hire employees, (ii) determine rate and method of pay and compensation of employees, (iii) adjust employee work schedules, (iv) maintain employees' employment records, and (v) otherwise affect the quality of employment of Plaintiff and the FLSA Collective Plaintiffs.

### Defendants Compromise a "Single Integrated Enterprise"

19. Defendants serving as a single integrated enterprise under the common control of Defendant Schwebel. Operating under several trade names, including but not limited to, SMG Automotive Holdings LLC, and Brooklyn Chrysler Dodge Jeep LLC. They are all engaged in related activities with a common business purpose. Facts supporting the assertion that Defendants operate as a single integrated enterprise include:

   a. Defendants share a common business purpose of selling, leasing, and servicing automobiles to consumers.

   b. Individual Defendant Schwebel maintains either de facto or formal control of shared business objectives. Employees of Defendants are commonly subject to the same wage and human resources policies, subject to the same workplace rules and guidelines, and receive common on-boarding documents signed by Schwebel on behalf of his corporate entities.

### CONDITIONS PRECEDENT TO SUIT

20. This Court has personal jurisdiction over the Defendants in that they are incorporated in the state of New York, maintain a corporate headquarters in the State of New York, are domiciled in the state of New York, and/or are subject to personal jurisdiction under NY CPLR § 302, New York's long arm statute.

21. Corporate Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that employees of Defendants handle goods and materials produced outside of New York that moved in interstate commerce and the Defendants, as employers of such a business, are subject to the jurisdiction of the FLSA.

22. At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and any other Regulations thereunder.

23. At all relevant times, the work performed by Plaintiff and FLSA Collective Plaintiffs was directly essential to the business operated by Defendants.

24. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

25. Plaintiff, on behalf of herself and all commissioned employees employed by Defendants from six years prior to the filing of this Complaint, brings claims for relief as a collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(B) ("FLSA Collective Plaintiffs").

26. Throughout the relevant period, Plaintiff and the FLSA Collective Plaintiffs were similarly situated, with nearly identical employment requirements and compensation structures, and subjected to Defendants' uniform decisions, policies, and practices. This consistent treatment has resulted in a willful failure to compensate employees for overtime work as required by law. The grievances articulated by Plaintiff herein mirror those affecting all FLSA Collective Plaintiffs.

27. This claim is appropriately filed and pursued as an opt-in collective action in accordance with Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The identities and contact information of the FLSA Collective Plaintiffs are accessible through Defendants, allowing for the issuance of notices via first class mail to their last known addresses as maintained by Defendants.

## STATEMENT OF FACTS

**Plaintiff's Employment with Defendants**

28. Ms. Duncan's employment duties consisted of paperwork and customer service which were performed under the supervision of Defendant Schwebel and limited by Defendants' rules and policies.

29. During Ms. Duncan's employment with Defendants, Plaintiff received a base salary of $850 per week and further remuneration in the form of earned commission on gross sales issued under Defendants' commissions policies.

30. The employment contract stipulated that Ms. Duncan would work 40 hours per week with scheduled Wednesdays and Saturdays off. However, as discussed herein, she regularly worked well in excess of 40 hours per week. There was no valid provision in the employment contract or other agreement that spoke to overtime pay.

31. Through her employment, Ms. Duncan routinely came in on her off days, clocking her hours, to meet the excessive demands of Defendants. Therefore, Ms. Duncan regularly worked approximately 60 hours per week. However, she never received any overtime pay.

32. Similarly, FLSA Collective Plaintiffs worked in excess of 40 hours per week on a regular basis to also meet the workload demands of the Defendants. Ms. Duncan personally observed this pattern of behavior.

33. Further exacerbating the exploitation, Defendants failed compensate Ms. Duncan pursuant to the commission structure (described below). With a failure to pay overtime and a failure to properly pay contracted commission, Ms. Duncan was receiving sub-minimum wage rates at times.

34. Ms. Duncan never received any wage notices or wage statements from Defendant as required under NYLL 195.1 and NYLL 195.3, respectively. This only further deprived her of

an ability to adequately contest her pay.

35. The commission structure was conditional on monthly gross receipts generated. The commission pay structure devised by Defendants comprised three tiers of compensation levels. At baseline Level I, employees earned 3.75% of gross sales. At Level II, employees received 4.25% and at Level III, employees would receive 4.75%. There were benchmarks in gross receipts that needed to be met to advance to higher levels.

36. FLSA Collective Plaintiffs were similarly subject to Defendants' aforementioned commission policy.

37. Defendants exclusively monitored these benchmark metrics and due to unlawful manipulation by Defendants, Ms. Duncan never reached Level II or III. According to Ms. Duncan, she knew of no employee that ever received Level II or Level III commission. This was likely a rigged system in which employees were permanently kept at a minimum level of commissions- benefitting the employer at the expense of the employees.

38. In October 2024, Defendants began deducting "costs" from Ms. Duncan's total gross receipts in turn, further reducing her earned commission for the month.

39. The shifty practice by Defendants had not been previously agreed upon and had never been done before, and this act by Defendants resulted in unpaid minimum wages.

40. On approximately November 7, 2024, Ms. Duncan questioned the deductions in her October sales report and her concerns were merely brushed aside by Schwebel. Schwebel responded with nonsense circular reasoning and perplexing language like, "we can't have a double used car," and displeasure at having to honor extended warranties. The same extended warranties Ms. Duncan was encouraged, by Defendants, to up-sell customers. (A protected complaint for FLSA and NYLL purposes).

41. The same deductions seemingly arose out of nowhere in Ms. Duncan's November

sales report. Defendants again deducted questionable amounts from Ms. Duncan's gross receipts, again depriving her of monthly earned commissions. This resulted in unpaid minimum wages.

42. On approximately December 6, 2024, Ms. Duncan approached Schwebel and questioned the deductions and again her concerns were unaddressed. (A protected complaint for FLSA and NYLL purposes). This time Schwebel launched into an hour long diatribe about "employees need[ing] to know where they stand" and his frustration with "charge backs" which were all meaningless because it was completely outside of Ms. Duncan's scope of authority or employment.

43. After that conversation, Schwebel then withheld approximately $7,800 from Ms. Duncan's December commission payment. This amount was substantial, egregious, and unquestionably in retaliation for her protected complaint.

44. In an attempt to obfuscate the situation, Schwebel linked Ms. Duncan's withheld commission to the amount of open repair orders ("RO") at Brooklyn Chrysler. Many of ROs were outside the domain and control of Ms. Duncan so it is dubious why her compensation would be conditional on the work of others.

45. Ms. Duncan explicitly asked Schwebel when she would "get the rest of the commission check?" In response, Schwebel stated, "well, it's going to be at my discretion." A complete and wanton disregard for the terms of their employment agreement.

46. In January 2025, Ms. Duncan's entire commission check was withheld by Schwebel, approximately $8,300. Ms. Duncan asked for a meeting with Schwebel. At that meeting, Ms. Duncan requested that Schwebel pay her commissions. (A protected complaint for FLSA and NYLL purposes).

47. Schwebel routinely asserted her commission check was "sitting upstairs" but

failed to ever deliver it. Instead, Schwebel spent the next hour citing financial difficulties the business was experiencing. Ms. Duncan rightly told Schwebel that those matters should have no bearing on her commission check. Embarrassed by the obvious flaw in his logic, Schwebel went back to focusing on open ROs, a tactic that worked well enough last month.

48. After that fruitless meeting, Ms. Duncan communicated her requests through email and text- routinely asking for her unpaid commission checks. On January 17, 2025, Schwebel requested Ms. Duncan's Chase Manhattan Zelle information, an indication he may finally be paying Ms. Duncan the commissions he owed her. He did not though. This was done by Schwebel to delay the matter further and avoid payment of commissions.

49. On January 29, 2025 (days after meeting with Schwebel), Ms. Duncan received an email informing her that her employment with Defendants was terminated. As of this date, Defendants have refused to pay Ms. Duncan her December 2024 and January 2025 commission checks.

50. Plaintiff retained TA Legal Group PLLC as counsel to represent Plaintiffs and FLSA Collective Plaintiffs in this litigation and agreed to pay the firm a reasonable fee for its service.

**CAUSES OF ACTION**

**COUNT I - VIOLATION OF THE FLSA, 29 U.S.C. Section § 206(a) and NYLL § 193**
**Plaintiff and FLSA Collective Plaintiffs Are Entitled To Recover Unpaid Minimum Wages**

51. Throughout her employment, Ms. Duncan received no pay other than the base $850 per week and commissions pursuant to the payment structure discussed above. Plaintiff was not exempt from the federal and New York minimum wage requirements.

52. In order to comply with the workload demanded by Schwebel, Ms. Duncan *routinely* worked beyond the required 8-hour workday and often had to come in on her day off.

This additional time was logged in the system and Schwebel was well aware of the added hours his employees were working.

53. It was common practice at Brooklyn Chrysler that employees were expected to work 50+ hours a week but still receive the contracted base salary of $850 per week, which was prorated for 40-hours.

54. Schwebel never provided overtime compensation, much less sufficient compensation to meet minimum wage requirements under the FLSA and NYLL.

55. As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiffs are further entitled to liquidated (i.e., double) damages. *See Hardgers-Powell v. Angels In Your Home LLC*, No. 16-CV-6612-FPG, (W.D.N.Y. Oct. 4, 2019) (finding Defendant-employers were statutorily required to pay overtime wages and liquidated damages were proper for NYLL claims); *Robertson v. Trinity Packaging Corp.*, No. 19-CV-659-JLS-LGF, 2025 LX 332139 (W.D.N.Y. Aug. 5, 2025) (liquidated damages were proper in the event of an employer's wilful NYLL violation).

56. Therefore, Plaintiff suffered unpaid minimum wages under the FLSA and NYLL and is entitled to recovery of back pay, liquidated damages, 9% pre-judgment interest, and attorney's fees and costs.

57. FLSA Collective Plaintiffs were similarly deprived of minimum wages and are entitled to recovery of back pay, liquidated damages, 9% pre-judgment interest, and attorney's fees and costs.

### COUNT II - VIOLATION OF THE NYCRR 142-2.18
### Plaintiff is Entitled To Recover Unpaid Spread of Hours

58. Under the NYLL spread-of-hours rule, for each shift exceeding 10-hours duration from start to finish, sub-minimum wage workers such as Plaintiff are entitled to an additional

hours' compensation at the minimum wage. Plaintiff worked shifts exceeding 10 hours per week on average, but was unlawfully deprived of spread hours premiums.

59. Accordingly, Plaintiff and FLSA collective Plaintiffs are entitled back pay, liquidated damages, 9% pre-judgment interest, and attorney's fees and costs.

**COUNT III - VIOLATION OF FLSA, 29 U.S.C. Section § 207(a) and NYLL § 651 & 190**
**Plaintiff and FLSA Collective Plaintiffs Are Entitled To Recover Unpaid Overtime**

60. Throughout her respective employment period, Plaintiff worked in excess of 40-hours each workweek, but was never paid overtime. There was never any agreement that Plaintiff's compensation under the commission pay structure was inclusive of overtime premium of one and one half times the straight time base hourly rate due under the FLSA and NYLL for all hours in excess of forty (40) worked hours each workweek.

61. Aforementioned, the demand Defendants put their employees required the employees to work beyond 40-hours per week. These hours were recorded and Defendants were apprised and aware of the added hours their employees worked. Regardless of their awareness, Defendants willfully failed to compensate employees overtime pay.

62. Based on Plaintiff's observations and conversations, FLSA Collective Plaintiffs likewise worked in excess of 40-hours per week and were similarly not paid overtime as required under the FLSA and NYLL.

63. As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiffs are further entitled to liquidated (i.e., double) damages. *See Hardgers-Powell v. Angels In Your Home LLC*, No. 16-CV-6612-FPG, (W.D.N.Y. Oct. 4, 2019) (finding Defendant-employers were statutorily required to pay overtime wages and liquidated damages were proper for NYLL claims); *Robertson v. Trinity Packaging Corp.*, No.

19-CV-659-JLS-LGF, 2025 LX 332139 (W.D.N.Y. Aug. 5, 2025) (liquidated damages were proper in the event of an employer's wilful NYLL violation).

64. Therefore, Plaintiff and FLSA Collective Plaintiffs are entitled to recovery of back pay, liquidated damages, civil money penalties, 9% pre-judgment interest, and attorney's fees.

**Plaintiff and FLSA Collective Plaintiffs Are Non-Exempt**

65. During her employment by Defendants, Plaintiff was at all times non-exempt from the overtime requirements of the FLSA or NYLL, and not within the exemption for commissioned employees or any other exemption.

66. Defendants cannot rely on the overtime exemption for commissioned employees of retail and service establishments. The applicable FLSA provisions and United States Department of Labor regulations provide that this exemption only applies to employees who are: (1) employed by a retail or service establishment, and; (2) whose regular rate of pay must exceed one and one-half times the applicable minimum wage for every hour worked in a workweek in which overtime hours are worked, and (3) where more than half the employee's total earnings in a representative period must consist of commission. 29 C.F.R. Section 7(i).

67. Here, Defendants' business is not a retail or service establishment. Moreover, Plaintiff's regular rate of pay was not 1.5x the minimum wage for the majority of their respective periods of employment.

68. Defendants similarly cannot rely on exemptions for executive, administrative or professional employees. These exemptions require that the employee be compensated on a salary basis above a certain threshold. Plaintiffs were not paid on a salary basis at all.

69. Based on Plaintiff's observations and conversations with other employees, FLSA Collective Plaintiffs were paid on a commission basis similarly to Plaintiffs. FLSA Collective Plaintiffs and therefore did not qualify for the executive, administration or professional

exemptions (all of which require compensation on a salary basis).

**Plaintiff and FLSA Collective Plaintiffs Were Employees, As Opposed To Independent Contractors**

70. Plaintiff was an employee for FLSA and NYLL purposes, as opposed to an independent contractor.

71. The "economic realities test" is used in New York to determine if an individual is an employee under the FLSA. Under that test, and employee is protected under the FLSA and NYLL if the employer (1) had the power to hire and fire, (2) supervised and controlled the employee's work schedule and conditions, (3) determined rate and method of payment, and (4) maintained employment records. *See Matter of Carver v. State of N.Y., 2015 NY Slip Op 08451, 26 N.Y.3d 272, 23 N.Y.S.3d 79, 44 N.E.3d 154*

72. Defendants exercised significant control over Plaintiff's work and that of other Service Advisors demonstrating employee status.

73. Plaintiff was subject to Defendants' rules and policies and received limited discretion in terms of performing assigned duties. Plaintiff was directly supervised by Defendant Schwebel, who issued direct instructions and reprimands to Plaintiff, fellow Service Advisors, and other non-exempt sales employees. Further requiring all aforementioned employees be physically present at the office each day and work at least 10am to 6pm.

74. Employee status is also reflected by Defendants' exerted control over the specific manner in which Plaintiff, fellow Service Advisors, and non-exempt sales employees were permitted to perform their jobs and the limits and opportunities to profit.

75. Last, Defendants ultimately terminated Ms. Duncan in January 2025.

76. The years long duration of employment of Plaintiff and low degree of skill and/or independent initiative required for the position also point to an employee status rather than

independent contractor status.

### COUNT IV - VIOLATION OF NYLL § 191(1)(c) and/or NYLL 191-c
### Plaintiff and Class Members Are Entitled To Recovery of Unpaid Commissions and Double Damages

77. Under NYLL 191(1)(c), a commission salesperson shall be paid the commissions earned or payable in accordance with the agreed terms of employment… in no event later than the time provided in the employment agreement or compensation plan.

78. Under NYLL 191-c, a sales representative is entitled to payment of all earned commissions within 5 days of termination of a relationship with a principal. Where a principal fails to pay a sales representative earned commissions within a 5 day period following the termination of the commission contract or arrangement, the principal is liable to the sales representative for double damages. See *Vega v. CM & Assoc., Constr. Mgmt. Ltd. Liab. Co.*, 2018 NY Slip Op 30979(U) (Sup. Ct.) (holding employees were entitled to liquidated damages in the event the employer willfully withheld earned pay).

79. Here, Defendants owe Ms. Duncan approximately $16,100 in earned commissions which were required to be paid no later than February 3, 2025. This is a substantial amount of money and whose withhold has caused significant financial difficulties for Ms. Duncan.

80. Accordingly, Ms. Duncan is entitled to recovery of unpaid commissions, 9% pre-judgment interest, and double damages under NYLL §§ 191(1) (c) and/or 191-c.

### COUNT V - VIOLATION OF NYLL § 193
### Plaintiff Suffered Unlawful Deductions From Compensation

81. Pursuant to NYLL § 193, an employer is not entitled to take deductions from an employee's earnings (outside of deductions required by law) unless such deductions expressly authorized in writing by the employee and are for the benefit of the employee. § 193 also bars

deductions outside of certain limited purposes set forth in the statute.

82. Here, as discussed above, Defendants took arbitrary and unauthorized deductions from Ms. Duncan's earned commissions based on unrelated matters, outside the scope of her responsibility or employment.

83. These deductions were not contracted upon, did not provide *any* benefit to Plaintiff, and seemingly arose out of nowhere. Moreover, Ms. Duncan approached Defendant Schwebel several times with protected complaints, requesting the commission that she earned and was owed to him. It was Defendant Schwebel who unilaterally refused to pay according to the terms of the employment contract.

84. The fraudulent nature of Schwebel's actions cannot be viewed as anything less than theft from Ms. Duncan and clearly in violation of NYLL § 193.

85. Accordingly, Ms. Duncan is entitled to recovery of unlawful deductions, 9% pre-judgment interest, and attorney's fees and costs.

**COUNT VI - Plaintiff Is Entitled To Recover Damages For UNJUST ENRICHMENT In View Of Defendants' Misappropriation Of Their Commissions**

86. To prevail on an unjust enrichment claim in New York, three key elements must be proved: (1) defendant was enriched, (2) at plaintiff's expense, and (3) retaining the benefit is against equity and good conscience. *See Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173 (2011)*.

87. Here, Defendants retained and assumed possession of Ms. Duncan's earned commission. In November 2024, Ms. Duncan approached Schwebel and requested her earned commission. Schwebel dodged the issue. During a second conversation about her unpaid commission in December 2024, Schwebel said the business had some financial difficulties and

linked these difficulties as justifiable reasons to withhold her commission further. And in January 2025, Schwebel insisted that commissions would be distributed at his "discretion."

88. It appears that Schwebel withheld earned commissions by the Plaintiff in order to shore up his other financial commitments and business interests, enriching himself at Ms. Duncan's expense.

89. Accordingly, Ms. Duncan is entitled to restitution, 9% pre-judgment interest, and attorney's fees and costs.

### COUNT VII - VIOLATION OF NEW YORK LABOR LAW § 195.1 and § 195.3
### Defendant Failed to Provide Proper Wage Statements and Notice

90. Defendants knowingly and willfully operated with a policy of not providing a proper wage notice and proper wage statements to Plaintiff at the beginning of her employment, annually thereafter, and in all relevant times, in violation of the applicable state wage laws.

91. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See N.Y. Spons. Mem., 2010 S.B. 8380.*

92. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being properly paid.

93. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and

actually harmed Plaintiff. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, and failure to disclose the measurements used to reach commission level benchmarks deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class Members' rights.

94.     This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Plaintiff and Class Members are therefore entitled to statutory damages and attorney's fees and costs.

**COUNT VIII - VIOLATION OF THE FLSA, 29 U.S.C. Section § 215(a)(3) and NYLL § 215**
**Defendants Retaliated Against Plaintiffs Pursuant to Protected Complaints**

95.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Collective Action Complaint as fully set forth herein.

96.     Retaliation by an employer o*r any person* acting in concert with the employer is a violation of 29 U.S.C. Section § 215(a)(3). Retaliation is not limited to discrimination and discharge. It includes "material changes" to the terms and conditions of the employment. *See Orsaio v. N.Y. State Dep't of Corrections (2022); Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53 (2006)*.

97.     Here, Ms. Duncan made several protected complaints to Defendants about the illegal and unlawful withholding of her earned commission (in November 2024, December 2024, and January 2025).

98.     Defendants retaliated against each complaint in an increasing and stepwise fashion. In retaliation to the November 2024 complaint, Defendants withheld *more* of Ms. Duncan's commission. In retaliation to the December 2024 complaint, Defendants withheld *all* her commission. And, after the January 2025 complaint, Defendants terminated Ms. Duncan.

99. These illegal retaliatory actions by Defendant caused Ms. Duncan anxiety and employment uncertainty unnecessarily adding to an already stressful situation.

100. Accordingly, Ms. Duncan is entitled to damages for back pay, front pay, lost benefits, lost bonuses, lost commissions, lost overtime, liquidated damages, emotional distress damages, punitive damages, and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and FLSA Collective Plaintiffs, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, and New York common law;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid minimum wages under the NYLL;

d. An award of unpaid spread of hours premium under the NYLL;

e. An award of unpaid overtime wages under the FLSA and NYLL;

f. An award of unpaid earned commissions under the NYLL;

g. An award of damages due to unlawful deductions from wages under the NYLL;

h. An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA;

i. An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

j. An award of damages from conversion;

k. An award of damages for unjust enrichment;

l. 9% prejudgment interest

m. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

n. Designation of Plaintiffs as the Representatives of the FLSA Collective

Plaintiffs; and,

o. Such other relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  Huntington, NY
        October 7, 2025

                              **TA LEGAL GROUP PLLC**
                              *Attorneys for Plaintiff*

By: _____
    Taimur Alamgir, Esq.
    Matthew Daidola, Esq.
    205 East Main Street, Suite 3-2
    Huntington, NY 11743
    Tel. (914) 552-2669
    tim@talegalgroup.com